IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**FRANK ANTHONY AMODEO,**

        Petitioner,

v.                                                  Civil Action No.: 3:23-CV-107
                                                         (GROH)

**R. BROWN,**

        Respondent.

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On April 26, 2023, the Petitioner, filed a Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging the calculation of his sentence, specifically his time in custody from June 28, 2019, through November 9, 2020. ECF No. 1 at 8.[1] The Petitioner is currently housed in the Northern District of West Virginia at Gilmer FCI in Glenville, West Virginia.[2] On April 26, 2023, Petitioner paid the filing fee. ECF No. 3.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be denied and dismissed with prejudice.

---

[1] ECF Numbers cited herein refer to case number 3:23-CV-107 unless otherwise noted.

[2] See Bureau of Prisons Inmate Locator search https://www.bop.gov/inmateloc/.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Conviction and Sentence in the Southern District of Iowa[3]

On July 1, 2019, a complaint was filed in case number 4:19-CR-120 in the Southern District of Iowa. ECF No. 1. On July 18, 2019, an indictment was returned which charged Petitioner with various drug trafficking offenses. ECF Nos. 17, 18. The indictment further charged the Petitioner with being previously convicted of three separate felony offenses. ECF No. 18 at 6. The Petitioner entered a plea of guilty on November 19, 2019, to Count 1 of the indictment which charged conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(b)(1)(A), and 846. ECF No. 81, 83, 108. On November 9, 2020, the Petitioner was sentenced to 180 months of imprisonment. ECF No. 220.

Approximately six weeks after filing the instant petition for habeas corpus, on June 9, 2023, the Petitioner filed a motion in his court of conviction for the BOP to recalculate his sentence. ECF No. 234. The Petitioner attached as exhibits many of the same documents attached to the instant petition. ECF Nos. 234 at 2 – 23. The District Court for the Southern District of Iowa denied the Petitioner's motion for relief on June 20, 2023, on the ground that where a petitioner challenges the manner of the computation and execution of his sentence, the claim is properly cognizable under 28 U.S.C. § 2241 in the judicial district in which the petitioner is incarcerated, or in West Virginia. ECF No. 235.

---

[3] Throughout section II.A. all ECF numbers refer to entries in the docket of Criminal Action No. 4:19-CR-120 in the Southern District of Iowa. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

### B.     Instant Petition for Habeas Corpus Under § 2241

The Petitioner's sole claim for relief as articulated by the Petitioner is that the Bureau of Prisons ("BOP") purposely misplaced and otherwise prevented him from filing an administrative remedy related to his request for jail time credits. ECF No. 1 at 5. According to the Petitioner, he attempted to exhaust his administrative remedies as to his claim, but employees of the BOP, specifically his unit manager threw his claim away. Id. at 7 – 8. As relief, the Petitioner asks this Court to direct the Bureau of Prisons to award him ail credits from June 28, 2019, through November 9, 2020, or 15 months and 11 days. Id. at 8. Liberally construed, the Petitioner's claim is considered a challenge to the BOP's calculation of his time credits. Attached to the petition are copies of various administrative remedy documents he filed and responses thereto. ECF Nos. 1-1.

On May 17, 2023, Respondent filed a motion to dismiss, or in the alternative for summary judgment, along with a memorandum and exhibits in support. ECF Nos. 7, 7-1 through 7-5. In his memorandum, Respondent argues that Petitioner is not entitled to relief under § 2241 because: (1) he failed to exhaust his administrative remedies before filing the instant petition; (2) he has received all the time credit to which he is entitled; and (3) he is not entitled to any prior custody credit. ECF No. 7-1.

Respondent argues that Petitioner failed to exhaust his administrative remedies prior to filing his petition for habeas corpus relief. However, the Respondent did not address the Petitioner's claim that he was prevented by BOP employees from successfully filing his claims. Id. at 6 – 7. The Respondent maintains that:

> While Petitioner did attempt to file three administrative remedies relating to prior custody credit, he did not file the remedies in accordance with BOP policy, resulting in the remedies being rejected. Rather than correcting the filings

> and exhausting his remedies, Petitioner has instead opted to attempt to circumvent the remedy process and file this claim in Federal District Court.

ECF No. 7-1 at 6 (internal citations omitted).

Further, the Respondent argues that Petitioner's credits have been properly applied. See 7-1 at 7. The Respondent argues that the Petitioner has received time credited toward his federal sentence starting on November 9, 2020, the date of his federal sentencing. Id. Further, the federal sentence was ordered to be served concurrently with the Petitioner's state sentence. Id. at 8. The BOP, consistent with the sentencing court's order, calculated the Petitioner's sentence commenced on the date of his federal sentencing, and was to be served concurrently with his state parole violation sentence. Id. at 8 – 9.

The Respondent further explains that the Petitioner is not **entitled** to credits for the time served from the date of his arrest until he was returned to the Iowa after being borrowed by federal officials. ECF No. 7-1 at 3. Respondent contends that the Petitioner is not entitled to credit for any time that Petitioner was in federal custody pursuant to a writ, from July 2, 2019, through November 13, 2020, because for that period the Petitioner remained in the primary custody of the state of Iowa, and was only "borrowed" by federal authorities. Id. at 2 – 3.

The Respondent concedes that the Petitioner **received** concurrent time credit starting on November 9, 2020, when he was sentenced in federal court. However, the Respondent asserts that the Petitioner did not receive credit toward his federal sentence for time prior to his sentencing date because those days were instead credited toward the revocation of the Petitioner's state parole in Polk County, Iowa, case number

4

FECR287564.[4] Id. at 3.

The Petitioner filed a response styled "objections" to the motion to dismiss on June 2, 2023, wherein he argues that he does not seek credit from June 28, 2019, through November 9, 2020.[5] ECF No. 10 at 1. Rather, the Petitioner asserts that he seeks credit toward his federal sentence for the time he was in federal custody on a federal writ of habeas corpus ad prosequendum from July 2, 2019, through November 12, 2020. Id. Additionally, the Petitioner contends that the requirement to exhaust his administrative remedies prior to filing a petition for habeas corpus is not valid because it is a judicially created, rather than statutorily created requirement. Id. at 2. Petitioner further asserts that he was prevented from exhausting his remedies because of the actions of BOP employees, but that the Court has discretion to excuse any failure to exhaust, and address the merits of his claims. Id.

The Respondent did not file a reply.

### III.   LEGAL STANDARD

**A.   Review of Petitions for Relief**

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and the Court's Local Rules of Prisoner Litigation Procedure, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule

---

[4] The documents from the Board of Parole from the State of Iowa show that the Petitioner's Iowa parole was revoked upon the "Judgment and Sentence Order" dated November 9, 2020. ECF No. 7-3 at 9.

[5] These dates are specifically listed by the Petitioner in his petition where he requests the Court to "[h]ave the FBOP award me my [j]ail credits from 6-28-2019 to 11-9-2020. 15 months and 11 days." ECF No. 1 at 8.

4, Rules Governing Section 2254 Cases in the U.S. District Courts; see also Rule 1(b) Rules Governing Section 2254 Cases in the U.S. District Courts (a district court may apply these rules to a habeas corpus petition not filed pursuant to § 2254).

### B. Post-Conviction Remedies and Relief

Prisoners seeking to challenge the validity of their convictions or their sentences are required to proceed under § 2255 in the district court of conviction. By contrast, a petition for writ of habeas corpus, pursuant to § 2241, is intended to address the execution of a sentence, rather than its validity, and is to be filed in the district where the prisoner is incarcerated. "As we noted in *O'Brien* [v. Moore, 395 F.3d 499, 505 (4th Cir. 2005)], the 'essence of habeas corpus is an attack by a person in custody upon the legality of that custody' and 'the traditional function of the writ is to secure release from illegal custody.'" Obando-Segura v. Garland, 999 F.3d 190, 194 (4th Cir. 2021), quoting Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

### C. Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and

7

Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### D. Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a

8

party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

### IV. ANALYSIS

The issue of whether Petitioner exhausted his administrative remedies prior to filing the instant action is in dispute and has been addressed by both parties. Petitioner

asserts he exhausted his administrative remedies before he filed his complaint, or that if he failed to exhaust his remedies that such failure was caused by employees of the BOP. The Respondent contends that Petitioner failed to exhaust his administrative remedies prior to filing his complaint, and that the Petitioner's filing of this action constitutes an attempt to circumvent the administrative remedy process. ECF No. 7-1 at 6. However, the Respondent failed to address the Petitioner's claims that he was thwarted from filing an administrative remedy by BOP staff who "threw away" his administrative remedy claims. ECF No. 1 at 8. Regardless of whether Petitioner exhausted his administrative remedies prior to filing this petition, it appears that the Petitioner is not entitled to relief upon the merits.

Because the Petitioner is challenging the computation of his sentence, the consideration of his claims under § 2241 is appropriate. The United States Supreme Court has long recognized that 18 U.S.C. § 3585(b) does not authorize a district court to compute a defendant's jail credit at sentencing. United States v. Wilson, 503 U.S. 329, 334 (1992). Rather, it is the United States Attorney General, acting through the BOP, who is responsible for computing an inmate's term of confinement. This computation includes the determination of when the sentence commenced and the amount of credit for time served following a federal conviction and sentencing. Id. at 333. In making this computation, the BOP must adhere to 18 U.S.C. § 3585 which provides as follows:

> (a) Commencement of sentence.—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence, at the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he

> has spent in official detention prior to the date the sentence commences—
>
> > (1) as a result of the offense for which the defendant was arrested; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

In <u>Wilson</u>, the Supreme Court expressly rejected Wilson's argument that § 3585(b) authorizes a district court to award credit at sentencing, reasoning that:

> Section 3585 indicates that a defendant may receive credit against a sentence that "*was imposed*." It also specifies that the amount of the credit depends on the time that the defendant "*has spent*" in official detention "prior to the date the sentence commences." Congress' use of a verb tense is significant in construing statutes. By using these verbs in the past and present perfect tenses, Congress has indicated that computation of the credit must occur after the defendant begins his sentence. A district court, therefore, cannot apply § 3585(b) at sentencing.

<u>Wilson</u>, <u>supra</u>, at 333 (emphasis in original, internal citations omitted).

In the instant case, the Petitioner seeks credit for the time he spent in state custody in Iowa, before he was released to commence his federal sentence imposed in the Southern District of Iowa. ECF Nos. 1, 10. In his petition, the Petitioner asserts that the Bureau of Prisons incorrectly calculated his sentence, and that BOP should have given him credit toward his federal sentence for time spent in state custody from June 28, 2019, through November 9, 2020. ECF No. 1 at 8. But in his response to the motion to dismiss or for summary judgment, the Petitioner asserts that the Bureau of Prisons incorrectly calculated his sentence, and that BOP should have given him credit toward his federal sentence from July 2, 2019, through November 12, 2020. ECF No. 10 at 2.

11

However, the documents provided by the Respondent demonstrate that from July 2, 2019, to November 12, 2020, the Petitioner was in state custody. The Petitioner was borrowed by United States Marshal Service, from state authorities on July 2, 2019, but remained in the primary custody of Iowa until he was returned on November 13, 2020. ECF Nos. 7-2 at 3; 7-5.

The Fourth Circuit has recognized that:

> A federal sentence does not begin to run, however, when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus *ad prosequendum.* Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation.

United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998) (citing Thomas v. Whalen, 962 F.2d 358, 361 n. 3 (4th Cir.1992); and Thomas v. Brewer, 923 F.2d 1361, 1366–67 (9th Cir. 1991) (producing state prisoner under writ of habeas corpus *ad prosequendum* does not relinquish state custody)). The Petitioner's federal sentence was imposed on November 9, 2020, at that time Petitioner was only in temporary custody of the U.S. Marshals Service pursuant to a Writ of Habeas Corpus Ad Prosequendum. ECF Nos. 7-2 at 2; 7-5. Further, although the Petitioner was in the temporary custody of United States Marshals, by way of a federal Habeas Corpus Ad Prosequendum, during that period of temporary custody he remained in the primary custody of the state of Iowa. While in state custody the Petitioner received credit for that time towards his state sentence. However, the Petitioner also received concurrent credit for his state time starting on November 9, 2020, when he was sentenced in federal court.

Upon sentence computation by the BOP, the Petitioner was not granted any prior custody credit for the period from June 28, 2019, through November 8, 2020, because that time was applied to Petitioner's state sentence. However, the Petitioner's federal sentence was imposed on November 9, 2020, and based on the clarifying statement by the District Judge, the BOP calculated the Petitioner's sentence to have commenced on the date he was sentenced in federal court, which was to run concurrently with his credit toward his Iowa parole revocation. After the imposition of his federal sentence, the Petitioner was returned to state custody on November 13, 2020. ECF No. 7-2 at 2. Upon Petitioner's release from state custody, the Petitioner was transferred to federal custody on March 15, 2022. ECF Nos. 7-2 at 2, 7-3 at 7.

Petitioner's service of his state sentence in Iowa prior to the imposition of his concurrent federal sentence[6] prohibited him from receiving simultaneous credit for that time spend in state custody. Consistent with 18 U.S.C. § 3585(b), a "defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another sentence."

Petitioner was not taken into federal custody until March 15, 2022. ECF No. 7-3 at 14. However, the Petitioner's sentencing judge sent a letter dated November 3, 2022, to

---

[6] The Respondent noted in the memorandum accompanying the motion to dismiss or for summary judgment that:

> While the federal judgment was silent as to whether the federal sentence was to run consecutive[ly] or concurrent[ly] to any state sentence to be imposed in relation to Polk County, Iowa case number FECR287564, the Court issued a clarifying statement on November 3, 2022, notifying the BOP of the Court's intent for the federal sentence to run concurrent with the sentence in Polk County, Iowa case number FECR287564. . . Accordingly, the BOP has calculated Petitioner's federal sentence using a commencement date of November 9, 2020.

ECF No. 7-1 at 3 (internal citations omitted).

13

the Designation and Sentence Computation Center of the BOP which specifies that, "Mr. Amodeo's sentence in the referenced case is to run concurrently with the state term of imprisonment imposed in Polk County, Iowa Case Number FECR287564." ECF No. 7-3 at 11. In accord with that letter and the Judgment, the BOP calculated that the date that the Petitioner's computation of sentence began is November 9, 2020. ECF Nos. 7-1 at 3; 7-3 at 15.

Notwithstanding the provision of § 3585 which mandates a defendant shall receive credit toward the service of a term "that has not been credited against another sentence," the Petitioner was given concurrency for the time he served in state custody starting on the date his federal sentence was imposed, November 9, 2020. However, the Petitioner was not eligible to obtain credit for time served ***prior*** to commencement of his federal sentence, because he was receiving credit for that time toward his state sentence. Accordingly, the BOP, appropriately determined the date that Petitioner started his sentence was the date his sentence was imposed in federal court, consistent with the provisions of 18 U.S.C. §§ 3585(b).

Although Petitioner asserts that the Bureau of Prisons incorrectly calculated his sentence, and refuses to grant him credit for time served in state custody, it is clear from 18 U.S.C. §§ 3585, 3621 and 3632 and the holding of Wilson, that neither the warden nor the Court calculate sentences for federal inmates. That task is the exclusive responsibility of the Bureau of Prisons, and it pursuant to the holding of Wilson this Court may not usurp the Bureau of Prisons' authority. Moreover, a review of § 3585 shows that Petitioner's sentence was properly calculated to commence on the date he was sentenced in federal court, and which was ordered to be served concurrently with the Iowa state parole

violation sentence. Thus, Petitioner has received all custody credit to which he was entitled, and his request for relief is without merit.

## V.  RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DENIED** and that the § 2241 proceeding be **DISMISSED WITH PREJUDICE.**

It is further **RECOMMENDED** that Respondent's motion to dismiss or for summary judgment [ECF No. 7] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: October 12, 2023

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE